**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **PATRICK BANGEMU,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-815-D** |
| | ) | |
| **CHRIS GANTT, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Patrick Bangemu, a citizen of Burundi proceeding with counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] United States District Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and (C). (Doc. 4). Respondents filed a timely Response in Opposition. (Doc. 13).[3] For the reasons set forth below, the

---

[1] Petitioner is housed at the Cimarron Correctional Facility in Cushing, Oklahoma. (Doc. 1, at 2).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] Petitioner named only Scarlet Grant, then-Warden of the Cimarron Correctional Facility as the Respondent in this action. (Doc. 1). The United States responded to the Petition on behalf of Robert Cerna, the Dallas Field Office Director for ICE, who is added as a Respondent. (*See* Doc. 13, at 1 n.1). Chris Gantt has since succeeded Scarlet Grant as Warden of Cimarron Correctional Facility. Pursuant to Federal Rule of Civil Procedure, 25(d), Mr. Gantt is automatically substituted as a Respondent in this action. The Response

undersigned recommends that the Petition be **DENIED** and that this action be **DISMISSED WITHOUT PREJUDICE**.

## I. Factual Background

Petitioner is a native and citizen of Burundi who entered the United States on August 4, 1998. (Doc. 1, at Ex. 2, at 2). Petitioner was admitted as a non-immigrant pursuant to a B2 tourist visa, which authorized him to remain in the United States until January 31, 1999. (Doc. 13, at Ex. 1). Petitioner overstayed his visa, and he was placed in removal proceedings on February 12, 1999. (Doc. 1, at Ex. 2, at 3). Petitioner was charged under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States following the expiration of his period of authorized stay. (Doc. 1, at Ex. 9, at 5).

An Immigration Judge ordered Petitioner removed on June 10, 1999. (Doc. 1, at Ex. 6, at 2). Petitioner timely appealed the decision to the Board of Immigration Appeals ("BIA"). (Doc. 1, at Ex. 9, at 3). The BIA administratively closed Petitioner's appeal on October 1, 2002, because Petitioner appeared to be eligible for Temporary Protected Status. (*Id*. at 5). Petitioner's removal order is therefore not administratively final.[4]

On July 25, 2025, Petitioner was convicted of Driving While Intoxicated, a third-degree felony, in Dallas County, Texas. (Doc. 13, at Ex. 2, at 1). The court imposed a

was not filed on behalf of Mr. Gantt because he is not a federal official. (*See id*.) The undersigned concludes that a separate response from Warden Gantt is not necessary to resolve this matter.

[4] An order of removal is final "at the earlier of two points: (1) a determination by the [BIA] affirming such order, or (2) the expiration of the period in which the alien is permitted to petition the BIA for review of the order." *Riley v. Bondi*, 606 U.S. 259, 267 (2025).

suspended ten-year sentence of imprisonment along with five years of community supervision. (*Id.*) Approximately one month later, on August 23, 2025, the Dallas Police Department arrested Petitioner for violating his order of supervision by again driving while intoxicated. (Doc. 1, at Ex. 2, at 3). ICE took Petitioner into custody on August 25, 2025. (*Id.*)

On August 27, 2025, Petitioner filed a motion to reopen and re-calendar his administratively closed appeal with the BIA. (Doc. 13, at Ex. 3). That motion remains pending.[5] Petitioner requested a custody redetermination hearing, which was held on October 28, 2025. (Doc. 1, at Ex. 3, at 1-2). The Immigration Judge denied bond, finding that Petitioner failed to establish that he does not pose a danger to others based on his multiple convictions for driving while intoxicated. (*Id.*) Petitioner reserved the right to appeal that determination to the BIA but never filed the appeal. (*Id*. at 2; Doc. 13, at 2).

Petitioner filed the instant Petition on April 15, 2026. (Doc. 1). Petitioner is detained at the Cimarron Correctional Facility in Cushing, Oklahoma.[6]

## II. Petitioner's Claims

Petitioner alleges two grounds for relief:

Ground One asserts that Petitioner's continued detention under 8 U.S.C. § 1226(a) violates the Due Process Clause of the Fifth Amendment. (Doc. 1, at 8). In support, Petitioner states that ICE detained him in August 2025 and that an Immigration Judge

---

[5] *See* EOIR Automated Case Information System, acis.eoir.justice.gov/en/caseInformation (last visited July 28, 2026).

[6] *See* ICE Detainee Locator, locator.ice.goc/odls/#/results (last visited July 28, 2026).

denied bond on October 28, 2025. (*Id.*) Petitioner claims that he did not appeal the Immigration Judge's decision "because doing so would have been futile." (*Id.*) Petitioner states that his removal order has been administratively closed since October 2002, and he argues that due process "does not permit the government to keep him detained without a new determination that continued detention is necessary." (*Id.*)

Ground Two asserts that Petitioner's "continued detention violates substantive Due Process because it has become excessive in relation to the government's civil purposes and is no longer reasonably justified." (*Id.*) In support, Petitioner states that since the Immigration Judge's denial of bond on October 28, 2025, he has "remained in custody for many additional months while his removal case has remained pending before the Board of Immigration Appeals since 2002." (*Id.*) Petitioner argues that, absent a new determination, his continued detention "has become excessive in relation to its stated purpose and is no longer justified as ordinary civil immigration detention." (*Id.*)

For relief, Petitioner requests his immediate release from custody. (*Id.* at 9). In the alternative, Petitioner asks the Court to order a new bond hearing to determine whether Petitioner's continued detention remains justified. (*Id.*)

## III. Standards of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Because Petitioner is represented by counsel, the rule of liberal construction this Court extends to *pro se* filings does not apply. *See Hall v. Bellmon*, 935 F.2d 1106, 1110

(10th Cir. 1991). Even for *pro se* litigants, that rule has limitations. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."). The undersigned accordingly resolves the arguments Petitioner has presented and does not construct those he has not.

**IV. Statutory Framework**

The parties agree that Petitioner is detained under 8 U.S.C. § 1226(a). (*See* Doc. 13, at 1). A non-citizen detained under § 1226(a) is entitled to a bond hearing at which he can argue to an immigration judge that he should be released while he awaits removal proceedings because he is not a danger to others or at risk for non-appearance. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). An Immigration Judge's decision to continue detention may in turn be appealed to the BIA. 8 C.F.R. § 236.1(d)(3). A non-citizen may also seek a further custody redetermination at any time his circumstances have materially changed. *Id.* § 1003.19(e).

In *Jennings*, the Supreme Court held that § 1226(a) confers no statutory right to periodic bond hearings, and that the canon of constitutional avoidance furnished no basis for reading such a right into the statute. *See Jennings*, 583 U.S. at 297-303. The Court left the constitutional questions unresolved, remanding them for decision in the first instance. *Id.* at 313-14. Petitioner's as-applied due process claims therefore rest upon the constitutional questions that *Jennings* reserved.

## V. Analysis

### A. Petitioner Is Not Required to Exhaust Administrative Remedies.

Respondents first argue that Petitioner failed to exhaust his available administrative remedies before seeking habeas relief. (Doc. 13, at 3-4). It is undisputed that Petitioner reserved but did not exercise his right to appeal the Immigration Judge's denial of bond, 8 C.F.R. § 1003.19(f), and that Petitioner has not since sought a custody redetermination hearing based on changed circumstances, *id.* § 1003.19(e). (Doc. 13, at 2, 4). Respondents contend that this failure defeats the Petition regardless of whether exhaustion is treated as jurisdictional or merely prudential, and requests dismissal on that basis alone. (*Id.* at 3-4). Respondents further argue that Petitioner's futility claim is conclusory, resting on an "accompanying memorandum" that has not been filed. (*Id*. at 3, at n.2).

While generally "the exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief[,] . . . the statute itself does not expressly contain such a requirement." *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) (citation modified). The Tenth Circuit has held that "[c]hallenges to immigration detention are properly brought through habeas[,] [a]nd the exhaustion deficiencies we have noted in other respects do not affect habeas jurisdiction over such claims." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

Moreover, "[e]xhaustion is typically nonjurisdictional," and courts "treat a rule as jurisdictional only if Congress clearly states that it is." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416-17 (2023) (citation modified). Section 1226(a), the statute governing Petitioner's detention, does not contain any express exhaustion requirement. *See Salvador*

*F.-G. v. Noem*, No. 25-CV-0243, 2025 WL 1669356, at *6 (N.D. Okla. June 12, 2025) ("[Section] 1226 contains no clear rule that requires exhaustion of administrative remedies.").

"Where Congress has not clearly required exhaustion," making it nonjurisdictional, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). District courts in this circuit have consistently found exhaustion unnecessary for non-citizens challenging detention under § 1226(a). *See Repela v. ICE Field Off. Dir.*, No. 26-CV-00552, 2026 WL 776123, at *2 (D. Colo. Mar. 19, 2026) ("[E]ven though a noncitizen detained pursuant to § 1226 may request a bond hearing, they are not required to do so before they can pursue § 2241 habeas relief.").

Because neither § 2241 nor § 1226(a) requires exhaustion, the undersigned is not persuaded that Petitioner was obligated to appeal the Immigration Judge's bond determination or request a second custody redetermination hearing before seeking habeas relief. The undersigned recommends that the Court reach the merits of the Petition.

**B. Petitioner's Procedural Due Process Claim Should Be Denied.**

Petitioner's Ground One presents the question of whether detention under § 1226(a) may become so prolonged that due process requires periodic bond hearings other than those available under 8 C.F.R. § 1003.19(e). The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is well established that the Due Process Clause applies to non-citizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

Courts examine procedural due process claims in two steps: (1) is there a protected liberty interest, and (2) if so, what procedures are necessary to ensure deprivation of that protected liberty interest accords with due process. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Respondents argue that Petitioner "has not been denied due process, he has chosen not to avail himself of the due process that is available to him." (Doc. 13, at 5). Respondents also argue more broadly that Congress may authorize the Executive to detain non-citizens during removal proceedings without individualized bond hearings so long as the non-citizen is properly in removal proceedings and removal is not foreclosed. (*Id*. at 5-9). Respondents contend that detention pending removal is a "constitutionally valid aspect of the deportation process" and that "due process does not require [the government] to employ the least burdensome means to accomplish its goal." (*Id*. at 7-8) (quoting *Demore v. Kim*, 538 U.S. 510, 523, 528 (2003)).

Courts within the Tenth Circuit and around the country considering habeas petitions have increasingly applied the framework in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the type of constitutional process required in immigration detention cases. Accordingly, the undersigned analyzes Petitioner's procedural due process claim under these factors. *See, e.g., Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1282 (D.N.M. 2026) ("In determining what procedures sufficiently protect due process in the immigration context, courts have applied the [*Mathews*] framework."); *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-881-NYW, 2025 WL 3653158, at *13 (D. Colo. Dec. 17, 2025) ("As for the burden of proof, the Court assesses the type of process required in a given case using the

so-called *Mathews* balancing test.") (internal citation omitted); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021).

### 1. The Private Interest

The first *Mathews* factor is "the private interest that will be affected." *Mathews*, 424 U.S. at 335. Here, "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty" interest in the Fifth Amendment's Due Process Clause. *Zadvydas*, 533 U.S. at 687-88. "In our society liberty is the norm, and detention . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Petitioner's private interest in being free from detention is at stake. Thus, the first factor weighs heavily in favor of procedures that carefully protect Petitioner's liberty interest. *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1243 (D.N.M. 2025) ("This Court need not wait another six, twelve, or eighteen months to determine that the first *Mathews* factor weighs in Petitioner's favor. Petitioner's private interest in being free from detention – and unlawful detention at that – is at stake now."); *Requejo Roman*, 816 F. Supp. 3d at 1283 (finding the first *Mathews* factor weighed in favor of the petitioner in ICE detention because "an individual's interest in being free from detention is the most elemental of liberty interests") (internal citations omitted).

### 2. The Risk of Erroneous Deprivation and the Value of Additional Safeguards

The second *Mathews* factor is "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. "Procedural due process rules are

shaped by the risk of error inherent in the truth-finding process." *Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2nd Cir. 2020) (citing *Mathews*, 424 U.S. at 344).

The question Petitioner's claim presents—whether detention under § 1226(a) may become so prolonged that due process requires the additional procedure of periodic bond hearings—has divided the courts of appeals. The First and Second Circuits have answered that question in the affirmative on the records before them. *See Hernandez-Lara*, 10 F.4th at 30, 39–41 (holding § 1226(a) procedures invalid as applied to a non-citizen detained for ten months who had received a bond hearing one month into detention, and requiring a new hearing at which the government bore the burden, by clear and convincing evidence as to dangerousness and by a preponderance as to flight risk); *Velasco Lopez*, 978 F.3d at 853-56 (holding that once § 1226(a) detention becomes "prolonged," the detainee is entitled to a new hearing at which the government bears the burden by clear and convincing evidence).[7]

The Third and Ninth Circuits have each rejected the claim that prolonged detention under § 1226(a) entitled the petitioner to a second bond hearing as a matter of due process, while expressly preserving the possibility of relief upon a different record. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279-80 (3d Cir. 2018) (rejecting the

[7] The circumstances in *Velasco Lopez* warrant note, however, because the petitioner's prolonged detention was largely attributable to delays by ICE, who refused to produce the detainee for his criminal court appearances and the criminal matter could not progress as a result. *Velasco Lopez*, 978 F.3d at 852–53. Bond was then denied on the basis of the very charges that the agency's own conduct had kept pending. *Id.* The risk of erroneous deprivation in that case was not theoretical; it was demonstrated on the record.

claim of a detainee who sought "to compel a second bond hearing despite alleging no constitutional defect in the one he received," while recognizing "that, despite an initial bond hearing, detention under § 1226(a) might become unreasonably prolonged, whether by virtue of government delay or some other cause," and declining to "decide when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing"); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203, 1213-14 (9th Cir. 2022) (holding that the Due Process Clause did not entitle the detainee to "a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," but declining to "foreclose all as-applied challenges to § 1226(a)'s procedures").

No court, however, has adopted a purely durational rule. *See e.g.*, *Borbot* 906 F.3d at 277 ("But Borbot cites no authority, and we can find none, to suggest that duration alone can sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a) and its implementing regulations."); *Velasco Lopez*, 978 F.3d at 855 n.13 (declining "to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden"); *Hernandez-Lara*, 10 F.4th at 30 n.4 (declining to determine when detention becomes sufficiently prolonged to require a further hearing).

Petitioner stands in the position of the petitioner in *Borbot*. The Petition does not contend that the Immigration Judge applied an incorrect standard, misallocated the burden of proof, excluded evidence, or lacked neutrality, nor does it challenge the finding of dangerousness or the convictions underlying it. Petitioner identifies no defect in the procedures used, and the record discloses no risk of error arising from them.

Petitioner has likewise failed to demonstrate that additional procedures would carry probable value. The regulations already afford the relief sought, providing both for an appeal of an adverse bond determination and providing, upon a showing of materially changed circumstances, for further custody redetermination. *See* 8 C.F.R. §§ 236.1(d)(3), 1003.19(e). Petitioner did not appeal the Immigration's Judge's adverse bond decision, nor has Petitioner sought a custody redetermination hearing in the months since. The Petition does not explain why Petitioner has not sought available administrative remedies, asserting only that resorting to those procedures would be "futile," an assertion resting entirely upon an "accompanying memorandum" that was never filed. (Doc. 1, at 4-5). Nothing in the Petition identifies a decision of the BIA, a feature of its practice, or a fact particular to Petitioner's circumstances that would substantiate the claim of futility. An unsupported assertion that a procedure would fail shows only that it has gone untested. *Cf. Rodriguez Diaz*, 53 F.4th at 1208–09 (weighing the second *Mathews* factor against the detainee given the existing procedural mechanism where he could request a new custody redetermination hearing upon a showing of changed circumstances). The second factor weighs against Petitioner.

**3. The Government's Interest and the Administrative Burden**

The final *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The Government has no legitimate interest "in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." *Velasco Lopez*, 978 F.3d at 854.

Here, however, an Immigration Judge found that Petitioner failed to establish that he does not pose a danger to the community. (Doc. 1, at Ex. 3, at 2). The record supplies the basis for that determination: a felony conviction for driving while intoxicated entered on July 25, 2025, followed approximately one month thereafter by an arrest for violating the terms of supervision by again driving while intoxicated. (Doc. 13, at Ex. 2; Doc. 1, at Ex. 3, at 2). This is not a case in which the Court must speculate as to the basis of the Immigration Judge's decision. *Compare L.G. v. Choate*, 744 F. Supp. 3d 1172, 1184 (D. Colo. 2024) (observing that where DHS introduced no records, "it leaves the question as to what the basis of the IJ's decision was").

The administrative burden attending an additional hearing is, standing alone, "minimal." *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025). But any burden must be weighed against whether the additional procedure would meaningfully reduce the risk of error. Petitioner has identified no such risk and has identified no additional procedure, the benefit of which would justify its burden. The relief Petitioner requests is a second custody redetermination hearing, unaccompanied by any explanation of what would distinguish it from the first. The third factor weighs against Petitioner.

**4. Conclusion**

The first *Mathews* factor favors Petitioner. The second and third factors favor the Government. Petitioner received a timely, individualized bond determination by a neutral adjudicator, which he does not challenge. Because no court has adopted a rule that due process requires a second or periodic bond hearing based on length of detention alone, and

because Petitioner identifies no inadequacy in the process he received, Ground One should be denied.

**C. Petitioner's Substantive Due Process Claim Also Fails.**

Where procedural due process asks whether adequate procedures were used, substantive due process asks whether the Government has a constitutionally sufficient justification to detain Petitioner at all. *See Santillan Quiroz v. Mullin*, --- F.4th ----, 2026 WL 1876709, at *16 n.12 ("[Q]uestions about the types of justifications capable of supporting detention sound in substantive due process, while questions about procedures used for proving the satisfaction of a given justification sound in procedural due process."). Civil detention comports with substantive due process where "in certain special and narrow nonpunitive circumstances . . . a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). The inquiry is comparative, requiring the Court "to weigh [the petitioner's] constitutionally protected interest in avoiding detention against the Government's special justification for detaining [him]." *Requejo Roman*, 816 F. Supp. 3d at 1284-85. A non-citizen thus retains a "substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty v. Thornburgh*, 943 F.2d 204, 209 (2d Cir. 1991).

Petitioner's showing on this ground consists of the assertion that his detention "has become excessive in relation to its stated purpose." (Doc. 1, at 8). Respondents argue that "what matters is not the length of detention but its continued relationship to a legitimate governmental interest." (Doc. 13, at 8-9) (citing *Zadvydas*, 533 U.S. at 690). Respondents

distinguish Petitioner's case from *Zadvydas* on the grounds that Petitioner remains in active removal proceedings with removal neither foreclosed nor unlikely. (*Id.*) The Petition identifies no governing standard, cites no case, and does not explain what the purpose of Petitioner's detention is, why the relationship between his detention and that purpose has failed, or what duration would suffice. For the reasons already stated, the undersigned cannot construct those arguments on Petitioner's behalf.

Even setting that failure aside, the decisions finding substantive due process violations in this context share a feature this case lacks: in each, the Government offered no individualized justification for the detention. *See Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1162 (D. Nev. 2025) ("Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioners of their physical liberty."); *Becerra Diaz v. Knight*, No. 2:26-CV-00247-RFB-DJA, 2026 WL 412483 (D. Nev. Feb. 12, 2026) (finding a substantive due process violation where the petitioner had not received a custody redetermination hearing since being detained by ICE). Here, the Government has provided an individualized justification for Petitioner's detention. An Immigration Judge found that Petitioner failed to establish that he does not pose a danger to the community, a finding resting upon his felony conviction for driving while intoxicated and his arrest one month later for again driving while intoxicated. Petitioner does not dispute those facts, challenge the finding, or argue that the justification is constitutionally insufficient. The comparative inquiry weighs the private interest against the Government's justification, and Petitioner has developed neither side of that comparison.

Instead, as with Ground One, Petitioner's substantive due process claim is premised only on the duration of his detention. Again, Petitioner has failed to provide any authority to support the proposition that the length of his detention, standing alone, amounts to a violation of his substantive due process rights. *Zadvydas* is the nearest analogue and does not carry the weight Petitioner might place on it. The Court there recognized a six-month period of presumptively reasonable detention in the post-removal-order context, but it did not hold that detention beyond six months is unlawful. *See Zadvydas*, 533 U.S. at 701. Instead, the Court held that after six months, if the non-citizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must respond with evidence sufficient to rebut that showing. *Id.* The six-month figure marks where inquiry begins, not where a violation occurs.

Ground Two should therefore be denied.[8]

[8] Petitioner twice states that his removal proceedings have been administratively closed since October 2002, and that his motion to reopen and re-calendar, filed two days after ICE took him into custody, has been pending before the BIA since August 27, 2025. (Doc. 1, at 8). Petitioner does not connect those facts to any legal standard, and the Court does not construe his filings to raise an argument he has not made. The undersigned notes only that the posture is unusual. Section 1226(a) authorizes detention "pending a decision on whether the alien is to be removed," and detention during removal proceedings serves the purpose of securing the non-citizen's presence for a removal those proceedings are meant to produce. *See Demore*, 538 U.S. at 528. Administrative closure "is a temporary suspension of a case" that removes it from the docket until a party moves to re-calendar. 8 C.F.R. § 1003.1(l), (l)(2). The consequence here is that Petitioner's 1999 removal order never became administratively final, and Respondent presently has no removal order to execute. Given the pending motion to re-calendar, it is unclear when Petitioner's removal proceedings will resume. *Compare Demore*, 538 U.S. at 529 (upholding detention that "has a definite termination point"), *with Zadvydas*, 533 U.S. at 690 (detention offends due process where its "goal is no longer practically attainable"). The undersigned expresses no view on whether, should this posture continue, Petitioner's detention would remain reasonably related to the purpose for which § 1226(a) authorizes it.

## VI. Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition (Doc. 1) be **DENIED** and that this action be **DISMISSED WITHOUT PREJUDICE**.

**The Court advises the parties of their right to object to this Report and Recommendation by August 6, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[9] The Court advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 30th day of July, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

---

[9] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").